UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MICHAEL FINOCCHIO,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>S. MOORE, Warden,<br><br>　　　　　　Respondent. | No.  2:22-cv-1604 DJC KJN P<br><br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

　　　Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2020 conviction for attempted murder and several gun use enhancements.  Petitioner was sentenced to 29 years in state prison.

　　　Petitioner claims that the admission of the victim's preliminary hearing testimony and statements to the police violated his right to confrontation.  After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

　　　On January 22, 2020, a jury found petitioner guilty of attempted murder and found several gun use enhancements to be true.  (ECF No. 26-1 at 120-22.)  The trial court also found that petitioner had a prior strike conviction and a prior serious felony conviction.  (Id. at 126.)  On

June 26, 2020, the trial court sentenced petitioner to 29 years in state prison. (Id. at 174-76.)

Petitioner appealed his conviction to the California Court of Appeal. (ECF No. 26-13.) On August 16, 2021, the California Court of Appeal remanded for resentencing on one of the gun use enhancements but otherwise affirmed the judgment. (ECF No. 26-17.)

On October 27, 2021, the California Supreme Court denied petitioner's petition for review. (ECF No. 26-19.)

On September 8, 2022 petitioner filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of California. (ECF No. 1.)

On October 20, 2022, the trial court resentenced petitioner to 29 years. (ECF No. 26-20.)

On December 19, 2022, respondent filed a motion to dismiss in the instant action on the grounds that three of the four claims raised were unexhausted in state court. (ECF No. 19.) On February 9, 2023, petitioner filed a motion to proceed solely on the exhausted claim and an amended petition raising his only exhausted claim. (ECF No. 22.) On March 16, 2023, the court issued an order finding respondent's motion to dismiss moot and directing respondent to file a response to the amended petition. (ECF No. 23.)

On May 9, 2023, respondent filed an answer. (ECF No. 25.) On May 23, 2023, petitioner filed a traverse. (ECF No. 27.)

III. Facts

After independently reviewing the record, this court finds the appellate court's summary accurate and adopts it herein. In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> At trial, testimony was presented that defendant knew the victim through defendant's ex-girlfriend, Nancy, [footnote omitted] and that defendant was angry with the victim because he believed the victim was dating Nancy.
>
> Nancy testified that she and defendant broke up about a week before the shooting. On the day of the shooting, she and the victim went to the house she had shared with defendant to collect her belongings. As she was pulling out of the driveway, she saw defendant exit a neighbor's house. The victim told her to drive away. As she left the scene, she saw the victim walking towards his truck; she did not see

2

any signs of an altercation between him and defendant. She waited for the victim four or five blocks away from the house, but when he did not arrive she drove back towards the house. As she was doing so, the victim came driving towards her. He stopped his truck, climbed into her truck and said, "Take me to the hospital." At the hospital, the victim was treated for a gunshot wound to his chest.

The victim was unavailable to testify at trial. Over defendant's objection, a transcript of his preliminary hearing testimony was admitted into evidence. At the preliminary hearing, the victim acknowledged his friendship with Nancy but then answered "I don't remember" to virtually every question posed by the prosecutor. When asked if he was intentionally saying he did not remember things that he actually remembered, he replied "No. I really don't remember." Defense counsel did not ask the victim any questions at the preliminary hearing.

Over defendant's objection, two police officers testified to statements the victim made to them while at the hospital. The victim told Officer Laura Bellamy that as he sat in the passenger seat of his truck, he saw someone walk to the front of the vehicle. The person fired a gun and he heard a gunshot. He moved to the driver's seat and reversed the vehicle. He heard three more gunshots and drove away. He believed the last shot struck him in the chest. He did not "see who [the shooter] was" but he described the shooter as "a shorter[ ] white male, wearing a darker colored beanie." He had not seen defendant while at the residence and did not know if defendant was the one who shot him. He told the officer that about a week before the shooting when he and Nancy had previously tried to retrieve her belongings, he and defendant had gotten into a fight. He claimed, however, that "after the scuffle, there's no beef." Despite these initial statements, towards the end of the interview he acknowledged that "he was 90 percent sure [defendant] did it." He told the officer that he could identify defendant when defendant stood on the grass as he drove forward but explained he was not forthcoming because "he didn't want to be labeled as a rat."

After telling the officer he was 90 percent sure defendant was the shooter, the victim explained that defendant was there when he and Nancy arrived at the house to retrieve her belongings. Because defendant "was yelling," the victim told Nancy to leave while he gathered the rest of her clothing. As he drove away, he saw defendant on the corner. He swerved as defendant fired three shots. He was hit by the last shot. When he saw Nancy's truck approaching, he honked his horn to get her attention, told her he had been shot, and asked her to take him to the hospital.

Police Detective Lisa Sampson spoke with the victim at the hospital after his interview with Officer Bellamy. The victim identified defendant by his photograph as the shooter. He clarified that at the time he told Nancy to leave he had not seen defendant. Rather, he heard two men arguing and assumed that one of them was defendant. As he got into his truck, someone shot in his direction and yelled something like, "I thought I told you not to come back around here." As he tried to drive away, the shooter, who was standing in the grass

>   at the corner, fired three shots, striking him in the chest with the last shot.
>
>   A .22 caliber handgun subsequently was found hidden in defendant's house. The gun used bullets consistent with the casings recovered near the scene of the shooting.

People v. Finocchio, 2021 WL 3615849, at *1-2 (Cal. App. Aug. 16, 2021).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

>   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>       (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>       (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may

4

not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[1] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

5

from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101. It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V. Discussion

A. Standard of Review

Petitioner alleges that admission of the victim's preliminary hearing testimony and statements to the police violated his right to confrontation. The California Court of Appeal addressed these claims as follows:

> *1. The victim's preliminary hearing testimony was properly admitted pursuant to Evidence Code section 1291.*
>
> "A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses." (People v. Herrera (2010) 49 Cal.4th 613, 620.) However, there is "'"an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and]

7

was subject to cross-examination.".'" (Id. at p. 621.) California codifies this exception in Evidence Code section 1291, subdivision (a), which provides that "former testimony," such as preliminary hearing testimony, does not constitute inadmissible hearsay "if the declarant is unavailable as a witness," [footnote 3] and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing" (id., subd. (a)(2)).

> [Footnote 3:  Under Evidence Code section 240, subdivision(a)(5), a witness is unavailable when he or she is "[a]bsent from the hearing and the proponent of his or statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process."  Defendant does not challenge the trial court's finding that the victim was unavailable at trial.

Defendant challenges the admissibility of the victim's preliminary hearing testimony under section 1291, subdivision (a)(2) on two grounds. He argues that the victim's "refusal to testify" deprived him of an adequate opportunity for cross-examination. Alternatively, he argues that given the victim's testimony, his interest in impeaching or challenging the victim at the preliminary hearing was not the same as his interest in challenging that testimony at trial. We disagree.

Defendant was given the opportunity to cross-examine the victim at the preliminary hearing but declined to do so. Counsel's decision not to cross-examine the victim because of the victim's purported lack of memory does not mean that defendant was denied the opportunity for cross-examination. By failing to undertake any cross-examination of the victim, defendant failed to establish a record for his claim. When the victim was called to testify at the preliminary hearing, one officer had already testified to his identification of defendant as the shooter. Had counsel directly confronted the victim with his statements to the police on cross-examination and had he remained completely silent or unresponsive, it might be argued that his silence or unresponsiveness effectively denied defendant his constitutional right of confrontation.  [Footnote 4.]   We cannot presume, however, that the victim would have remained silent or unresponsive to questions defense counsel never asked. (See State v. Nyhammer (2009) 197 N.J. 383, 414 [963 A.2d 316, 334] ["That counsel decided to forgo critical cross-examination because of [the witness's] unresponsiveness to many questions on direct does not mean that defendant was denied the opportunity for cross-examination."]; People v. Garcia-Cordova, 2011 IL App (2d) 070550-B [963 N.E.2d 355, 370] ["Where a defendant does not attempt to cross-examine a witness on her out-of-court statements, he cannot complain that the witness was unavailable for cross-examination."].)

> [Footnote 4: In his reply brief, defendant identifies the type of questions he might have asked the victim at the preliminary hearing. "The important questions had to do with

8

[the victim's] statements to the police which he said he did not remember. How well could he see the shooter? How far away was the shooter? Had he consumed drugs or alcohol that evening? Did drugs or alcohol affect his ability to observe? What was the basis of his identification of [defendant]?"

For this reason, defendant's reliance on People v. Giron-Chamul (2016) 245 Cal.App.4th 932 is misplaced. In that case, the court held that the victim's refusal to answer questions on cross-examination denied defendant his constitutional right to confrontation. (Id. at p. 961.) The court emphasized, however, that the issue before it involved the minor's "refusal to answer ... important questions" on cross-examination, not her real or feigned failure to remember. (Id. at p. 965 [noting that "a witness's failure to remember, whether real or feigned, generally does not deny the defendant an opportunity for effective cross-examination"].) The court expressly observed that "[t]his is not a case where the defendant had an opportunity for cross-examination but chose to forgo it as a matter of strategy." (Id. at p. 964, citing State v. Nyhammer, supra, 197 N.J. at p. 414 [963 A.2d at p. 334].)

Defendant's suggestion that he had no motive to cross-examine the victim at the preliminary hearing is not persuasive. As noted above, by the time the victim testified at the preliminary hearing, Officer Bellamy had already testified to the victim's prior statement and identification of defendant as the shooter. Thus, the motivation for cross-examining the victim at the preliminary hearing—to call into question the reliability of his prior identification—was no different than the motivation for doing so at trial.

Accordingly, there was no error in the admission at trial of the victim's preliminary hearing testimony.

*2. The victim's statements to the police were admissible under Evidence Code section 1294.*

Evidence Code section 1294 permits the statements of an unavailable witness to be introduced at trial as prior inconsistent statements of the witness if the statements were previously introduced at the preliminary hearing. [Footnote 5.] Evidence Code section 1294 was "designed to overcome the admissibility problems associated with out-of-court statements which are inconsistent with an unavailable witness's former testimony by requiring that the recorded statement be introduced at the prior hearing where the witness actually testified. It is well settled that the inherent unreliability typically associated with such out-of-court statements may be deemed nonexistent when the defendant has had an opportunity to question the declarant about the statements." (People v. Martinez (2003) 113 Cal.App.4th 400, 409.)

> [Footnote 5: Evidence Code section 1294, subdivision (a) reads: "The following evidence of prior inconsistent statements of a witness properly admitted in a conditional examination, preliminary hearing, or trial of the same

9

criminal matter pursuant to Section 1235 is not made inadmissible by the hearsay rule if the witness is unavailable and former testimony of the witness is admitted pursuant to Section 1291: [¶] (1) A video or audio recorded statement introduced at a conditional examination, preliminary hearing, or prior proceeding concerning the same criminal matter. [¶] (2) A transcript, containing the statements, of the conditional examination, preliminary hearing, or prior proceeding concerning the same criminal matter."]

Here, Evidence Code section 1294 applies because (1) the victim was an unavailable witness at trial; (2) his testimony at the preliminary hearing was admitted at trial pursuant to Evidence Code section 1291; (3) the statements that he made to the police officers were inconsistent with his testimony at the preliminary hearing that he could not remember the shooting [Footnote 6]; and (4) defendant was given an opportunity to cross-examine the victim about his statements at the preliminary hearing. Defendant's arguments to the contrary are not persuasive.

> [Footnote 6: Defendant does not challenge the trial court's finding that the victim's statements to the officers were admissible as prior inconsistent statements because the victim's lack of memory could be found to be feigned and his testimony was deliberately evasive. (See People v. Johnson (1992) 3 Cal.4th 1183, 1219–1220 [as long as there is a reasonable basis for concluding witness's lack of memory is evasive and untruthful, admission of prior statements is proper].)

In his opening brief, defendant argues that Evidence Code section 1294 is not applicable because the victim's statements to the police officers were introduced at the preliminary hearing through the officers' testimony and not by introduction of a recording of the statements. Section 1294, however, does not require that the prior inconsistent statements be recorded and admitted in that form at the preliminary hearing. Section 1294, subdivision (a)(2) expressly contemplates that the statements may be introduced through a witness's testimony.

People v. Martinez, supra, 113 Cal.App.4th at page 409 is not to the contrary. In that case, the court held that a recording of prior inconsistent statements made to the police by an unavailable trial witness was not admissible because the recording had not been introduced at the preliminary hearing. The court explained, "to be admissible at trial under Evidence Code section 1294, the recording of [the witness's] statement first should have been introduced into evidence at the preliminary hearing. [Citation.] It was not. Instead, [the witness] was asked to review specific excerpts of a transcript of his interview with the police to see if it refreshed his recollection, and the prosecutor read from portions of the transcript to impeach [the witness]. [The detective] who questioned [the witness] also testified at the preliminary hearing that [the witness] had made the statements he denied making. But neither the transcript nor a recording of the interview was introduced as evidence at the

10

> preliminary hearing. Thus, while the transcript of [the witness's] preliminary hearing testimony was properly admitted at trial due to his unavailability [citation], the court erred in allowing the jury to hear the actual recording of his statement to the police." (Ibid.)
>
> The Attorney General acknowledges that under section 1294, subdivision (a)(2), the proper procedure would have been to introduce at trial the transcript of the officers' preliminary hearing testimony reflecting the prior inconsistent statements. The Attorney General correctly argues, however, that any error in that regard has been forfeited because defendant "failed to object on this ground below. Had he done so, the prosecutor would have presented [the victim's] prior inconsistent statements through the officers' preliminary hearing testimony. [Defendant's] failure to object forfeited any reliance on this error as a basis for reversal because it deprived the prosecution of an 'opportunity to cure the defect.' (People v. Coleman (1988) 46 Cal.3d 749, 777.)"
>
> Accordingly, there was no reversible error regarding the admission of the officers' testimony regarding the victim's statements.

People v. Finocchio, 2021 WL 3615849, at *2-5.

The California Supreme Court denied petitioner's petition for review without comment or citation. (ECF No. 26-19.)

The decision of the California Court of Appeal resolved petitioner's Confrontation Clause claims only on state evidentiary grounds. It is possible the California Supreme Court later implicitly ruled on the constitutional claims, albeit without explanation, when it decided petitioner's claims. Fenenbock v. Director of Corrections for California, 692 F.3d 910, 921, n.12 (9th Cir. 2012). This court need not resolve this question because, as discussed herein, petitioner's claims fail under a de novo review standard. Id.

B. Background

This court first describes the at-issue testimony. The transcript from the victim's testimony at the preliminary hearing was read into the record at trial. (ECF No. 26-7 at 60-68.) As noted by the California Court of Appeal, at the preliminary hearing, the victim repeatedly testified that he did not remember the shooting incident. (Id.)

As discussed herein, the trial court allowed Detective Sampson and Officer Bellamy to testify regarding the victim's statements made to them at the hospital after the shooting, deemed inconsistent to the victim's testimony at the preliminary hearing. Detective Sampson testified

11

that on January 20, 2018, she spoke with the victim at the hospital. (ECF No. 26-8 at 28.) She asked the victim about what happened. (Id.) The victim identified petitioner as the shooter and described what happened. (Id. at 29-33.) Officer Bellamy testified that on January 20, 2018, she spoke with the victim at the hospital. (ECF No. 27-7 at 100.) The victim was in the emergency room. (Id. at 101.) The victim stated that a week or two prior to the shooting, he and petitioner had a physical altercation. (Id. at 117.) The victim stated that he did not want to be labeled as a rat and he was 90% sure petitioner shot him. (Id. at 118.)

This court next discusses the trial court's rulings regarding the admissibility of the victim's preliminary hearing testimony and Detective Sampson and Officer Bellamy's testimony regarding the victim's statements at the hospital. The trial court found that the victim's preliminary hearing testimony was admissible because the victim was unavailable at trial and the victim was a necessary witness for the prosecution. (ECF No. 26-4 at 25.)

Turning to the trial court's ruling regarding the admissibility of the victim's statements to Detective Sampson and Officer Bellamy, the prosecutor told the trial court that he would offer the victim's statements to Detective Sampson and Officer Bellamy at the hospital as inconsistent with the victim's testimony at the preliminary hearing. (ECF No. 26-7 at 71.) Later, the trial court asked the prosecutor how the victim's statements at the hospital could be prior inconsistent statements if the victim testified at the preliminary hearing that he did not remember anything. (Id. at 102.) The prosecutor provided evidence of telephone calls made by the victim from the jail, after the preliminary hearing, indicating that the victim remembered the incident:

> Prosecutor: Yes, Your Honor. And this is evidence that I've already given to the defense on a prior date. This is the jail calls of [the victim] where he says, I quote, for the dude who shot me, I have to make sure I'm covered on the other part. Further says, I would rather take care of it in person. He further states, I couldn't do it. It wasn't in me. I got ten days for contempt of court.
>
> Further states, they're trying to charge him, -- this is what we believe to be Nancy Ottinger. They're trying to charge him with premeditated attempted murder now.
>
> [The victim] says, premeditated?
>
> Yeah.

12

>[The victim] says, when did they do that?  That is crazy.  Over a female too.  That's crazy.  I don't know what you were doing to him, but that's fucked up to make him want to shoot someone over you.
>
>And the last statement says, in the report it says, this is [the victim] speaking, inmate Finocchio, said, yeah, that's what you get for snitching, bitch.

(Id. at 107.)

The preliminary hearing occurred in May 2019.  (Id.)  The prosecutor told the court that the referenced phone calls were made from August 24, 2019 to the present.  (Id.)

After hearing the prosecutor's description of the victim's telephone calls, made after the preliminary hearing, the trial court found that the victim was intentionally feigning his memory loss at the preliminary hearing or lying about his inability to remember.  (Id.)  The trial court stated that the victim's phone calls "basically impl[ied that he knew who did it and punishment was too harsh or something to that effect, that he didn't want to participate in the process."  (Id. at 108.)  Based on this finding, the trial court allowed the testimony by Officer Bellamy and Detective Sampson regarding the victim's statements at the hospital as prior inconsistent statements.

C.  Discussion

In the petition for review and in the amended petition, petitioner argues that the victim's preliminary hearing testimony and statements to the police should not have been admitted because he was denied his right to confront the victim at the preliminary hearing where the victim refused to answer any substantive questions.  (ECF No. 26-18 at 21(petition for review); ECF No. 22 at 7-13 (amended petition).)

*Legal Standard*

Under the Sixth Amendment's Confrontation Clause, "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him."  U.S. Cons. Amend. VI.  Admission of prior testimony does not violate the Confrontation Clause where the witness is unavailable and the defense had an adequate opportunity for cross-examination.  Crawford v. Washington, 541 U.S. 36, 51-52 (2004).

////

"[T]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (internal citations and quotation marks omitted) (emphasis in original). Significantly, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. at 679 (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)) (emphasis excluded).

> The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.

Delaware v. Fensterer, 474 U.S. at 21–22.

*Victim's Preliminary Hearing Testimony*

Petitioner does not challenge the state court's finding that the victim was unavailable to testify. Instead, petitioner argues that he did not have an adequate opportunity to cross-examine the victim at the preliminary hearing because the victim refused to testify about the shooting. Petitioner argues that the jury could not judge the victim's credibility based on the preliminary hearing transcript.

Preliminary hearing testimony is admissible so long as the defendant had an adequate opportunity to cross-examine the witness. Crawford, 541 U.S. at 57-58; see also California v. Green, 399 U.S. 149, 166 (1970) ("If [the witness] had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing—the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the declarant's inability to give live testimony is in no way the fault of the State.").

The clearly established Supreme Court authority set forth above makes clear that the victim's preliminary hearing testimony was admissible because petitioner, through counsel, had an adequate opportunity to cross-examine the victim at the preliminary hearing. Petitioner had an

adequate opportunity to cross-examine the victim at the preliminary hearing even if the victim feigned memory loss regarding the shooting incident. See Felix v. Mayle, 379 F.3d 612, 618 (9th Cir. 2004), rev'd on other grounds, 545 U.S. 644 (2005) (witness' feigned memory loss did not deny defense an opportunity for cross-examination; "Felix was free to cross-examine the witness on such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination ...); Gilliam v. Marshall, 2011 WL 4543047, at *8 (C.D. Cal. March 29, 2011), adopted, 2011 WL 2682641 (C.D. Cal. July 7, 2011) ("Neither the Supreme Court nor the Ninth Circuit have recognized memory loss or 'feigned memory loss' as cognizable bases for a Confrontation Clause claim").

In addition, petitioner had an adequate opportunity to cross-examine the victim at the preliminary hearing despite trial counsel's decision not to cross-examine the victim. See Zambrano v. Gipson, 2016 WL 3033693, at *13 (C.D. Cal. April 19, 2016), adopted by 2016 WL 3030465 (C.D. Cal. May 26, 2016) ("That Petitioner's counsel chose not to cross-examine Jane Doe regarding her interview and the alleged instances of child molestation, despite having the opportunity to do so, further supports the fact that Petitioner's confrontation rights were not violated."); U.S. v. Santacruz, 2010 WL 3491518, at *5 (E.D. Cal. Sept. 2, 2010) (no violation of Confrontation Clause where defendant's counsel had opportunity to cross-examine witness but chose not to take it).

In the amended petition, petitioner cites Pointer v. Texas, 380 U.S. 400 (1965) in support of his claim that admission of the preliminary hearing testimony violated his right to confrontation. Pointer held that the Confrontation Clause was violated by admission at trial of an absent witness's preliminary hearing testimony, which had not been cross-examined at the preliminary hearing, because the defendant had not been provided counsel. Pointer does not apply to the instant action because petitioner had counsel at the preliminary hearing.

Accordingly, having conducted a de novo review of the record, this court finds that admission of the victim's preliminary hearing testimony did not violate petitioner's right to confrontation.

////

15

1    *Victim's Statements to Police*

2    At the outset, this court makes clear that petitioner had an opportunity to cross-examine

3 the victim at the preliminary hearing about his statements to the police because the prosecutor

4 asked the victim about these statements. (ECF No. 26-7 at 62-68.) In other words, petitioner's

5 counsel knew of the victim's statements to the police at the preliminary hearing.

6    As observed by respondent in the answer, in Delgadillo v. Woodford, 527 F.3d 919, 926

7 Cir. 2008), the Ninth Circuit concluded that the state court's determination that admission of the

8 victim's statements to police officers at trial did not violate the Confrontation Clause, pursuant to

9 Crawford, supra, because the victim was unavailable and had testified at the preliminary hearing.

10 See also Castellano v. Small, 2010 WL 796945, at *8 (C.D. Cal. March 5, 2010) (admission at

11 trial of victim's statements to police did not violate Confrontation Clause, pursuant to Crawford,

12 supra, because petitioner had opportunity at preliminary hearing to question victim concerning

13 her prior statements).

14    As in Delgadillo and Castellano, the victim in the instant case was unavailable at trial and,

15 for the reasons discussed above, petitioner had an adequate opportunity to cross-examine him at

16 the preliminary hearing regarding his statements to the police. Accordingly, having conducted a

17 de novo review of the record, this court finds that admission of the victim's statements to the

18 police did not violate petitioner's right to confrontation.

19    *Harmless Error*

20    In the answer, respondent argues that even if constitutional error occurred, the error was

21 harmless. This court need not conduct the harmless error analysis because it is clear that no

22 constitutional violation occurred.

23 VI.  New Claim Raised in Traverse

24    In the traverse, petitioner raises a new claim: his counsel was ineffective for failing to

25 cross-examine the victim at the preliminary hearing. (ECF No. 27.)

26    In the original petition, petitioner argued, "Attorney Curtis Boyd did not ask a single

27 question during the preliminary hearing." (ECF No. 1 at 5.) However, attorney Denis

28 Honeychurch represented petitioner at the preliminary hearing where the victim testified. (ECF

No. 26-14.)  It is unclear if petitioner meant to claim in the original petition that attorney Honeychurch failed to ask a single question of the victim at the preliminary hearing.

In any event, petitioner gives no explanation for either his previous abandonment of the claim raised in the traverse or his failure to present this claim earlier in these proceedings.  The claim raised in the traverse also appears to be unexhausted.  Accordingly, this court recommends that the court decline to consider the new claim raised in the traverse.  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A traverse is not the proper pleading to raise additional grounds for relief.").

VII.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied and the court decline to consider the new claim raised in the traverse.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 21, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

Fino1604.157